IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREW C HRUBY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. <u>3:12-cv-00981-JPG-PMF</u> |
| | ) |
| MARCUS HODGE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

<u>**REPORT AND RECOMMENDATION**</u>

**FRAZIER, Magistrate Judge:**

Before the Court are Defendants Funk, Marcus Hodge, and Nurse Sellers' (Docs. 82, 87) motions for summary judgment on their affirmative defense of Plaintiff's failure to exhaust administrative remedies. Plaintiff Andrew C. Hruby has filed a response to both motions (Doc. 95). An evidentiary hearing was held on July 30, 2013. Hruby attended the hearing by video-conference and testified. For the following reasons, it is recommended that the Defendants' motions for summary judgment (Docs. 82, 87) be granted.

I.   **BACKGROUND**

On September 10, 2012, the Plaintiff, Andrew C. Hruby, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. Hruby is an inmate at Menard Correctional Center ("Menard"). During all times relevant to this lawsuit, Hruby was an inmate at Lawrence Correctional Center ("Lawrence"). Both Lawrence and Menard are correctional facilities under the jurisdiction of the Illinois Department of Corrections ("IDOC"). Defendants Funk, Marcus Hodge, and Nurse Sellers were all employed at Lawrence in various capacities during Hruby's confinement at that institution.

Hruby alleges that Defendants Sellers, Hodge, and an unknown party were deliberately indifferent to his serious medical needs (Count 1) after he was seriously burned by scolding water on July 8, 2012. He also alleges that Defendant Funk showed deliberate indifference to a known risk of harm (Count 2) – scolding hot water. The Court screened the complaint on September 21, 2012 and allowed Hruby to proceed on both Counts. *See* Doc. 6. Hruby's initial request for emergency injunctive relief has previously been denied. *See* Doc. 38.

## II.   DISCUSSION

Pursuant to the Prison Litigation Reform Act ("PLRA"), all prisoners bringing an action under 42 U.S.C. § 1983 with respect to prison conditions, must first exhaust all administrative remedies that may be available to them before being allowed to proceed with a lawsuit. *See* 42 U.S.C. § 1997e(a); *see also Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008); *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999). The Seventh Circuit has taken a strict compliance approach to exhaustion, requiring inmates to follow all grievance rules established by the correctional authority. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "Exhaustion is an affirmative defense, and the burden of proof is on the defendants." *Id.* (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)).

The IDOC regulations allow for two, alternative methods of submitting grievances; emergency and normal (non-emergency). For the emergency method, there is a two-step process for exhaustion. First, the prisoner is required to submit a grievance directly to the Chief Administrative Officer ("CAO") of the prison. *See* 20 Ill.Admin.Code § 504.840. If the CAO determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm" (i.e. there is an emergency), the grievance is "handled on an emergency basis." *Id*. Second, the prisoner may challenge a CAO determination that the grievance is not of an

emergency nature by submitting the grievance to the Administrative Review Board ("ARB") for emergency review. *See id*. § 504.850(a). *See also, e.g., Glick v. Walker*, 385 F. App'x 579, 583 (7th Cir. 2010) (finding that it was error to grant summary judgment for the defendants when in a prisoner failed to submit his grievance through the normal process after both the CAO and ARB determined that a grievance did not constitute an emergency because IDOC rules did not require the prisoner "to do something more after his emergency grievance had been rejected by the warden and by the ARB"). After the grievance is considered at step two by the ARB, exhaustion of administrative remedies regarding an emergency grievance may be deemed completed. *See id*.

For grievances submitted under to the normal method, the IDOC has a three-step process that prisoners under their jurisdiction are required to follow in order to exhaust administrative remedies. For the first step, the prisoner must first attempt to resolve the dispute through his or her grievance counselor. *See* 20 Ill.Admin.Code § 504.810. At step two, if the prisoner is unable to resolve the dispute through his or her counselor, the prisoner may file a written grievance with the Grievance Officer within sixty (60) days of discovery of the dispute. *See id*. The grievance must contain factual details regarding each aspect of the dispute, including "what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the [dispute]." *Id*. The Grievance Officer then considers the grievance and reports his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 Ill.Admin.Code § 504.830. The CAO typically advises the prisoner of the decision at step two in writing within two months after receipt of the written grievance. *See id*. The third and final step of the exhaustion process is an appeal to the Administrative Review Board ("ARB"). After receiving a response from the CAO at step two, the prisoner has thirty (30) days from the date of the response to appeal to the ARB. *See* 20 Ill.Admin.Code § 504.850. The ARB typically makes

a final determination within six (6) months after receipt of the appealed grievance. *See id*. With regard to prisoners under the control of the IDOC, administrative remedies may normally be deemed fully exhausted after the prisoner receives a copy of the ARB's decision at step three.

When there are factual issues relating to the exhaustion defense, the Court must resolve those issues by conducting an evidentiary hearing. *See Pavey*, 544 F.3d at 740-42. The Court is permitted to make findings of fact and credibility assessments of witnesses at such an evidentiary hearing. *See Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011). If the Court finds that the prisoner exhausted his administrative remedies, "the case will proceed to pretrial discovery, and if necessary a trial, on the merits." *See Pavey*, 544 F.3d at 742. If the Court finds that the prisoner did not exhaust his administrative remedies, the Court determines whether:

(a) the plaintiff has unexhausted remedies, and so he must go back and exhaust;
(b) or, although he has no unexhausted remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), in which event he will be allowed to go back and exhaust; or
(c) the failure to exhaust was the prisoner's fault, in which event the case is over.

*Id*.

### A. Emergency Grievance

The evidence in this case demonstrates that Hruby was purportedly burned by scolding hot water in the shower on July 8, 2012. *See* Doc. 83-1 at 6. Hruby then authored a grievance dated July 9, 2012 complaining about burns from the hot showers.[1] *See id*. at 6-7. Defendant Sellers is the only named defendant identified on the grievance. *See id*. at 7. It appears that the CAO returned this grievance to Hruby on July 17, 2012 indicating that it did not consider the

---

[1] Although there are many copies of grievances concerning other issues in the record, the July 9 grievance is the only grievance that addresses the allegations of the complaint.

grievance an emergency and instructing Hruby to submit the grievance in the normal manner. *See id*. at 6. This lawsuit was filed on September 10, 2012.

The issue regarding the emergency grievance in this case then comes down to whether Hruby submitted his July 9, 2012 emergency grievance to the ARB after it was returned by the CAO on July 17. Hruby testified under oath that he did. However, evidence submitted by the Defendants and Hruby's own statements[2] raise concerns over the veracity of that testimony. The Defendants have submitted the affidavit of Jackie Miller, ARB member, who attests to have searched ARB records for records of an appeal submitted by Hruby concerning a complaint about being burned in the showers at Lawrence on July 8, 2012. *See id*. at 2 ¶ 7. Ms. Miller indicated that she was unable to locate any such record. *See id*. ¶ 8.

After first-hand observation of Hruby's testimony and consideration of the Defendants' evidence, the Court was satisfactorily persuaded that Hruby failed to file an appeal of his July 9 emergency grievance to the ARB. Out of abundance of caution, the Court granted Hruby an additional opportunity to submit evidence after the evidentiary hearing demonstrating that he did in fact submit an emergency grievance to the ARB following the CAO's July 17 rejection of the emergency grievance. Hruby submitted the additional 22 pages of evidence on August 20, 2013. *See* Doc. 121. This evidence consists of a letter to the Court, copies of two grievances, an emergency grievance log, copies of IDOC regulations, a self-kept mail log for the months of August-December 2012, copies of completed "offender authorization for payment" forms, and a copy of a letter from the court to Hruby concerning the filing of this case. *See id*.

---

[2] In his response to the pending motions for summary judgment, Hruby admitted that he failed to appeal any grievance to the ARB regarding the allegations in the complaint. *See* Doc. 95 at 5. This statement is inconsistent with Hruby's testimony at the evidentiary hearing. When asked about the inconsistency, Hruby failed to offer a coherent explanation.

There are two pieces of relevant evidence submitted by Hruby that deserve discussion for resolving the question of whether Hruby appealed the denial of his July 9 emergency grievance to the ARB. First, the self-kept mail log indicates that Hruby sent mail to the ARB in August. *See id*. at 10, 20. There are obvious problems with this mail log. Most importantly, the log is most likely inadmissible hearsay. Aside from that, the Court has no way confirming exactly what was sent to the ARB, if anything, in August 2012. The same problems exist with the "offender authorization for payment" for postage forms. *See id*. at 16. Of note, one form is marked with the date July 22, 2012, and says "ARB Grievance" in the memo field. *See id*. However, even if the form was admissible, the Court has no way of confirming what was sent and where it was sent.[3]

The Court does not find the most recently submitted evidence reliable, persuasive or particularly helpful in resolving the instant question. The Court typically looks for some supporting evidence that a grievance was actually submitted, such as a copy of follow-up letter requesting the status of a particular grievance. Here, there is a letter in the record to the ARB, which appears to be written in late 2012 or early 2013, requesting the status of missing grievances. *See* Doc. 95 at 13. This letter was submitted several months after the July 9, 2012 grievance was purportedly sent to the ARB and also after this case had already begun. *See id*. It is evident that Hruby files many grievances on various topics, and this particular letter the makes no mention of the July 9 grievance.

---

[3] Counsel for Defendant Sellers questioned Hruby on this point at the evidentiary hearing. Sellers pointed out that while the copies that Hruby submitted to the Court has the notation "ARB Grievance," the records that Sellers subpoenaed from the institution did not include this notation. This certainly causes concern over the reliability of the evidence submitted by Hruby and the credibility of Hruby's testimony.

After weighing all the evidence and assessing the credibility of the testimony at the July 30, 2013 hearing, the Court finds it more likely than not that Hruby failed to promptly submit his July 9, 2012 emergency grievance to the ARB after it was determined to be a non-emergency by the CAO.  Rather, it appears more likely than not that Hruby followed the instructions on the July 9 grievance and just re-submitted it through the normal method.

### B.  Normally Submitted Grievance

After Hruby received his July 9 grievance from the CAO as a non-emergency on July 17, 2012, the record demonstrates that his counselor received the grievance at step one of the normal method a few days later. *See* Doc. 83-1 at 6.  Hruby received a denial of his July 9 grievance on August 9, 2012. *See id.*; Doc. 88-3 at 1 (counselor grievance log).  There is a lack of documentary proof as to what happened with the grievance after this point, which is part of what precipitated the setting of the evidentiary hearing on July 30, 2013.  Hruby testified that he submitted it to the grievance officer at step two of the normal process around on or August 12, 2012.  He claims that the grievance was then lost in the system.

This lawsuit was filed on September 10, 2012 so the issue that remains is whether Hruby "jumped the gun" by filing this lawsuit 38 days after he submitted his July 9 grievance officer at step two of the normal method.  It is true that the IDOC cannot "exploit the exhaustion requirement through indefinite delay in responding to grievances." *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).  However, even accepting Hruby's version of events as completely true, this is not a case where the IDOC indefinitely delayed ruling upon Hruby's grievance.  After receipt of a grievance at step two, IDOC regulations explicitly state as follows:

> The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the [CAO]. The [CAO] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances.

7

20 Ill.Admin.Code § 504.830(d). Thus, under the normal processing method, Hruby had to wait until approximately October 12, 2012 (two months after he submitted the grievance at step two) to conclude that his grievance was lost in the system. Even if he would have received a response at step two sometime before filing this lawsuit, Hruby would have had to wait another 6 months in order to allow the ARB sufficient time to process the normally-submitted grievance. *See id*. § 504.850(f). As it stands, the evidence demonstrates that Hruby failed to follow IDOC rules by failing to allow sufficient time for the IDOC to process the grievance. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002) (providing that "unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred"); *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) (providing that a prisoner cannot file suit and exhaust his administrative remedies while the litigation is pending). The Defendants' (Docs. 82, 87) motions for summary judgment should be granted.[4]

### III.   UNKNOWN DEFENDANT(S)

Hruby's complaint also contains a claim against unknown defendant(s). The Court has previously set a deadline on March 1, 2013 for amending pleadings. *See* Doc. 50. In the same order, Hruby was also instructed to submit a proposed amended pleading that agrees with Local Rule 15.1, which requires the identification of all new text in the amended pleading. *See id*. (directing Hurby to comply with SDIL-LR 15.1). The Court later extended the deadline for amended pleading to April 1, 2013 upon granting Hruby's extension of time. *See* Doc. 64. On April 8, 2013, Hruby filed a motion to amend the complaint. *See* Doc. 72. The Court struck the

---

[4] In reaching its conclusion that Hruby failed to properly exhaust his administrative remedies prior to filing this lawsuit, the undersigned does not reach the issue of whether Hruby's failure to name Defendants Funk and Marcus Hodge is fatal to his claims against them.

motion to amend the complaint because it was filed 7 days after the deadline. *See* Doc. 73. On April 26, 2013, Hruby objected to the Court's (Doc. 73) order and filed another motion to amend the complaint. *See* Docs. 75-76.

Putting aside the issue of whether the (Doc. 72) motion to amend the complaint was timely filed (this issue is properly before the district judge pursuant to Rule 72(a) of the Federal Rules of Civil Procedure), the proposed amended complaint submitted by Hruby does not comport with Local Rules. Despite being warned of the formatting requirements of Local Rule 15.1 (*see* Doc. 50), Hruby failed to identify the new text in the proposed pleading.

The proposed amended pleading also fails to correct other deficiencies. For example, the proposed amended pleading still contains claims against unknown parties despite adding two new defendants. The purpose of setting a deadline for amended pleadings was to allow Hruby some time to conduct limited discovery in order to name *all* of the unknown defendants. The Court would be right back in the same position if it allowed Hruby to amend the complaint and at the same time permit claims to proceed against other unknown defendants.

Hruby also seeks to add the state law tort of negligence as a claim in this case. However, this endeavor would likely prove to be futile because the Court of Claims Act, 705 ILCS § 505/1 *et seq.*, provides that the Illinois Court of Claims has exclusive jurisdiction to hear and determine "[a]ll claims against the State founded upon any law of the State of Illinois." 705 ILCS § 505/8; *see also Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990).

Accordingly, Hruby's (Doc. 75) motion to amend the complaint should be denied. *See Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) ("[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to

cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." (citations omitted)).  All unknown parties should be dismissed from this case.

## IV.  RECOMMENDATION

For the forgoing reasons, it is recommended that the Defendants' motions for summary judgment (Docs. 82, 87) be granted as follows:

1) It is recommended that the Court find that the Defendants have demonstrated, by a preponderance of the evidence, that Plaintiff Andrew C. Hruby failed to properly exhaust his available administrative remedies prior to filing this lawsuit; and

2) It is recommended that the Defendants Funk, Marcus Hodge, and Nurse Sellers be dismissed.

It is further recommended that the (Doc. 75) motion to amend the complaint be denied and that all unknown defendants be dismissed.

If this recommendation is adopted in its entirety, all other pending motions may be denied as moot and this case can be closed.

**SO RECOMMENDED.**

**DATED: September 24, 2013.**

*s/ Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**